996 F.2d 1215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cedric GRIFFIN, Plaintiff-Appellant,
v.
The CITY OF DETROIT and Gregory Everett, Defendants-Appellees.
 No. 92-2062.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1993.
 
 Before: MILBURN and NORRIS, Circuit Judges; and WISEMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Cedric Griffin appeals from the summary judgment for the defendants, Gregory Everett, a Detroit police officer, and the City of Detroit, Michigan, in this civil rights action filed under 42 U.S.C. § 1983 challenging the search of plaintiff's residence. On appeal, the issues are (1) whether there was probable cause for the search when the supporting affidavit allegedly contained false allegations, and (2) whether the search exceeded the scope of the warrant.
 
 I.
 A.
 
 2
 At approximately 2:00 a.m. on October 4, 1990, three friends of seventeen-year-old Ms. Naeemah Pickens arrived at the home of her step-mother, Mrs. Theresa Mims, and hysterically related that they had been at a nightclub in Detroit with Pickens when she was abducted by plaintiff Griffin, who was carrying a 9 mm. pistol. They related that Griffin had forced Pickens into his blue 1987 Acura Legend and driven away. Mrs. Mims contacted another friend of Pickens who knew the area where Griffin lived. Together, the two drove to Griffin's neighborhood in Southfield, Michigan. The friend identified the street on which Griffin lived but was unable to find his house. The women then went to a gas station and called the police. When the police arrived, Mrs. Mims related what she had been told and also informed the police that Pickens had been previously abducted and physically abused by Griffin. The Southfield police called the Detroit police, since the abduction had originated there.
 
 
 3
 The Southfield police then led the Detroit police to Griffin's house, with which the Southfield police were familiar. Together, the police attempted to cause Griffin to release Pickens. However, Griffin denied that Pickens was in his home and refused to open the door. Griffin called his attorney, who arrived at the scene and eventually persuaded Griffin to come out of his home with Pickens. The Southfield police report indicates that Pickens related that she had been abducted by Griffin on a prior occasion and was physically mistreated by Griffin. Griffin was taken into custody by the Detroit police, but he was not armed at that time.
 
 
 4
 Defendant Everett then executed an affidavit to secure search warrants for Griffin's home and automobile. He obtained the information for the warrants by calling his superior officer, Sergeant Wallet, who had been among the officers originally at the scene. The affidavit was handwritten by a Southfield officer. The affidavit stated:
 
 
 5
 A. Affiant has been a police officer for the Detroit Police Department for eight (8) years.
 
 
 6
 B. That Affiant is the officer in charge of the investigation of the kidnapping of Naeemah Pickens, which occurred at approximately 2:00 a.m. on Thursday, October 4, 1990, in the City of Detroit.
 
 
 7
 C. That Affiant has spoken with Sgt. Robert Wallet of the Detroit Police Department and was thereby informed as follows:
 
 
 8
 1. That Sgt. Wallet has interviewed Naeemah Pickens.
 
 
 9
 2. That Naeemah Pickens described the events of Thursday, October 4, 1990 as follows:
 
 
 10
 a. That Ms. Pickens stated that she was at "Dazzles" Nightclub in the City of Detroit when, at approximately 2:00 a.m., an individual by the name of Cedric Dwayne Griffen (sic) showed up.
 
 
 11
 b. That Mr. Griffen came up to Ms. Pickens holding what she believed to be a 9mm handgun and told her to come with him.
 
 
 12
 c. That Mr. Griffen forced Ms. Pickens out of the nightclub and into a blue Acura Legend.
 
 
 13
 d. That Mr. Griffen then drove Ms. Pickens to the residence located at 26800 Shiawassee in the City of Southfield, county of Oakland, State of Michigan.
 
 
 14
 e. That Mr. Griffen drove the blue Acura Legend into the attached garage of the residence.
 
 
 15
 f. That Mr. Griffen forced Ms. Pickens out of the blue Acura Legend and into the residence.
 
 
 16
 g. That Ms. Pickens noted that, at the time that Mr. Griffen forced her into the residence, Mr. Griffen had the 9mm handgun in the waistband of his pants.
 
 
 17
 h. That, approximately an hour later, Ms. Pickens heard police knocking on the door.
 
 
 18
 i. That Ms. Pickens heard Mr. Griffen ask "who is it?" and Ms. Pickens heard a response of "police."
 
 
 19
 j. That Ms. Pickens then observed Mr. Griffen running around the house. At times, Ms. Pickens lost sight of Mr. Griffen. Shortly thereafter, Ms. Pickens observed Mr. Griffen surrender to the police.
 
 
 20
 D. That Affiant was the officer that Mr. Griffen surrendered to.
 
 
 21
 E. That Affiant conducted a search of Mr. Griffen's person upon his surrender and discovered that the 9mm handgun described by Ms. Pickens was no longer on his person.
 
 
 22
 F. That since Mr. Griffen's surrender, both Southfield and Detroit police officers have maintained a surveillance of the residence and no one has left or entered the residence.
 
 
 23
 G. That based upon the above information, Affiant believes that there is probable cause to believe that the 9mm handgun to be searched for and seized is now located in the place to be searched.
 
 
 24
 H. That the execution of this search warrant is essential to complete investigation.
 
 
 25
 Appellant's Brief, pp. 5-7, Appellee's Brief at 11-13. On the basis of his affidavit, Everett obtained warrants from a magistrate to search Griffin's house, garage, and car. The warrant authorized the seizure of the blue 1987 Acura Legend and 9 mm. handgun used in the alleged kidnapping.
 
 
 26
 Later that same evening, October 4, 1990, Everett and his partner executed the search warrants with officers of the Southfield police standing by. Following a search of Griffin's residence, the officers searched the blue 1987 Acura Legend in the attached garage. A 9 mm. pistol and .44 revolver were found in the door compartments of the car.
 
 
 27
 The Detroit police officers also notified the Southfield police that their search of the Griffin residence had revealed the presence of an Uzi, a substantial amount of cash, and some powder, believed to be a controlled substance, on the kitchen table. However, none of these items were seized by the Detroit police. After the Detroit police left the scene, the Southfield police searched the home and seized the above items, other guns, and other personal belongings including televisions and stereo equipment.
 
 
 28
 As Pickens refused to press charges against Griffin, he was released from Detroit police custody the following day. Griffin then went to the Southfield police station to obtain the return of his property, but they arrested Griffin for a violation of the Controlled Substances Act. However, when the powder seized at his home tested negative for controlled substances, the charge was dropped and Griffin was again released. Pickens has subsequently signed two affidavits, the first denying that she ever told defendant Everett that Griffin possessed a gun on the night of the incident, and a second recanting any statements attributed to her by any police officers regarding this incident.
 
 B.
 
 29
 On April 11, 1991, Griffin filed a complaint in the Circuit Court for the County of Wayne, Michigan, seeking monetary relief and raising claims of false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, and violations of his civil rights under 42 U.S.C. § 1983. On May 15, 1991, defendants removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1443(2).
 
 
 30
 Subsequently, on May 11, 1992, after the completion of discovery, defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. A hearing was held on the motion for summary judgment on July 6, 1992, and on July 24, 1992, the district court entered an order granting summary judgment for the defendants and dismissing the case. The district court found that Griffin had not established that any of the allegedly false statements in defendant Everett's affidavit were made knowingly or intentionally, or with reckless disregard for the truth, and that probable cause existed for the search of Griffin's residence and automobile. This timely appeal followed.
 
 II.
 
 31
 This court reviews a district court's grant of summary judgment de novo. See Brooks v. American Broadcasting, Cos., 932 F.2d 495, 500 (6th Cir.1991); Faughender v. City of North Olmstead, Ohio, 927 F.2d 929, 911 (6th Cir.1991). A grant of summary judgment will be affirmed on appeal where the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Canderm Pharmacal. Ltd. v. Elder Pharmaseuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Summary judgment is properly entered where the opposing party fails to establish the existence of the elements of the case on which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 A.
 
 32
 Griffin argues that the district court erred in finding that probable cause existed for the issuance of the search warrants for his home and automobile, because the affidavits in support of the warrants contained deliberately or recklessly false material allegations. In determining whether there is probable cause to issue a search warrant, a magistrate's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 218 (1983).
 
 
 33
 The Supreme Court has stated that a warrant is invalid when it is based upon an affidavit which contains false statements that were made knowingly and intentionally, or with reckless disregard for the truth, and where the affidavit is insufficient to establish probable cause when the false statements are deleted. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Therefore, in reviewing an affidavit for probable cause, the court must first set aside any deliberately or recklessly false information. See United States v. Campbell, 878 F.2d 170, 171 (6th Cir.), cert. denied, 110 S.Ct. 243 (1989).
 
 
 34
 In challenging Officer Everett's affidavit, Griffin relies on the affidavits filed by Pickens subsequent to the search in this case. In those affidavits, Pickens denies making any statements to the police. Griffin also relies on the deposition of Sergeant Wallet, who stated that he had not interviewed Pickens, but that Sergeant Bellinger had done so. During his deposition, Everett stated that he had spoken to Wallet to obtain some of the information for the affidavit. Apparently, defendant Everett either misstated the name of the officer who interviewed Pickens or he misunderstood the source of the information, which was actually Mrs. Mims. Defendants argue that the latter situation occurred, but the former situation seems more probable, as some of the information set forth in the affidavit could only have come from Pickens, such as the fact that Griffin put the 9 mm. handgun into the wasteband of his pants when he forced her into his residence.
 
 
 35
 At any rate, a negligent or innocent mistake is insufficient to invalidate a warrant. See Franks, 438 U.S. at 171-72; United States v. Cummins, 912 F.2d 98, 103 (6th Cir.1990). "Truthful" for purposes of a showing of probable cause:
 
 
 36
 does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.
 
 
 37
 Franks, 438 U.S. at 165.
 
 
 38
 In this case, Griffin simply failed to establish that Everett entertained serious doubts about the truth of his allegations and acted with a reckless disregard for the truth. See United States v. Williams, 737 F.2d 594, 602 (7th Cir.1984), cert. denied, 470 U.S. 1003 (1985). The information which Everett received from Sergeant Wallet, even if he failed to realize that Sergeant Bellinger did the actual interview, was consistent with what he had personally heard from Mrs. Mims and had personally observed at Griffin's residence during the early morning hours of October 4, 1990. The district court was not required to accept Griffin's unwarranted conclusions and inferences that Everett knew Pickens had not made any statement and deliberately falsified his affidavit. See Morgan v. Churchs' Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). Therefore, the district court correctly found that Griffin had failed to establish any knowing or reckless falsehood sufficient to invalidate the warrant.
 
 
 39
 Moreover, Everett could have established probable cause for the search with a warrant based only on what he personally had observed that night. The statement of Mrs. Mims, as an ordinary citizen witness rather than an informant, is entitled to credence. See Easton v. City of Boulder, Colorado, 776 F.2d 1441, 1449 (10th Cir.1985), cert. denied, 479 U.S. 816 (1986). "Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen ... in the position of a crime ... witness." Id. Furthermore, the sincerity of Mrs. Mims' statement is aptly demonstrated by the circumstances of this case, because she drove across the city of Detroit at 2:00 a.m. out of concern for her stepdaughter's safety. Thus, the allegedly false statements in Everett's affidavit were unnecessary to establish probable cause for the search warrant.
 
 B.
 
 40
 Griffin's remaining argument on appeal is utterly frivolous. He asserts that the search exceeded the scope of the warrant because defendant Everett and his partner continued to search his house after finding the 9 mm. handgun. One of the problems with this argument is that it depends on a totally baseless assertion that the handgun was found soon after the search was initiated. Griffin asserts that Everett found the handgun in the front closet of his home, shortly after beginning the search. However, in his deposition, Everett testified that he and his partner seized two handguns as a result of their execution of the search warrants, a 9 mm. pistol and a .44 revolver. These were the only two items that the officers took from Griffin's residence besides the blue 1987 Acura Legend. J.A. p. 150. Officer Everett testified that the 9 mm. pistol was found in the left door panel of the Acura Legend and the .44 revolver was found in the right door panel of the Acura Legend. J.A. p. 150. Thus, Officer Everett could not have found the 9 mm. handgun in the front closet of Griffin's residence, because he seized only one 9 mm. handgun as a result of the execution of the search warrant, and the evidence shows that this gun was found in a compartment in the door panel of plaintiff's car.
 
 
 41
 The other problem with Griffin's argument is that even if it were assumed that Officer Everett found the 9 mm. pistol in the front closet of the residence at the outset of the search, neither Officer Everett nor his partner had any way of knowing whether that 9 mm. gun was the one used in the alleged kidnapping of Pickens or if there might be more than one 9 mm. gun on the premises. Griffin's reliance on Creamer v. Porter, 754 F.2d 1311 (5th Cir.1985), for the proposition that the search in the present case exceeded the scope of the warrant is misplaced as Creamer is clearly distinguishable from the facts of this case. In Creamer, the police officers searched the plaintiff's place of business, a used furniture store, pursuant to a search warrant which authorized the seizure of two television sets. The warrant described the two television sets by size, color, and serial number. Id. at 1314. The officers continued the search of the premises for nearly three hours after the two television sets described in the search warrant had been seized. Id.
 
 
 42
 In this case, the warrant executed by Officer Everett and his partner authorized the seizure of the 9 mm. pistol. However, the warrant did not list a serial number for the pistol. Thus, even if Officer Everett had located the 9 mm. pistol at the outset of the search, he was justified in continuing the search to determine if there was more than one such handgun on the premises.
 
 C.
 
 43
 The other claims raised by Griffin in his complaint have been abandoned on appeal and need not be considered. See Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992). Similarly, although defendants continue to assert a defense of qualified immunity on appeal, we need not reach that issue because the issue of the existence of probable cause was resolved on the merits. See Criss v. City of Kent, 867 F.2d 259, 261 (6th Cir.1988).
 
 III.
 
 44
 We conclude that Griffin failed to establish that there was a genuine issue of material fact regarding the existence of probable cause for the search of his residence. Accordingly, the district court's grant of summary judgment for defendants is AFFIRMED.
 
 
 
 *
 Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation